IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:08-CR-26 |
| | ) | (JORDAN/GUYTON) |
| STEVEN WAYNE WOOD | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. Defendant Steven Wayne Wood is charged in a three-count Indictment [Doc. 19] with: (1) conspiring to attempt to take by force and intimidation, from the person and presence of another, money, belonging to, and in the care, custody, control, management, and possession of a bank, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and in doing so, jeopardizing the life of a person by use of a dangerous weapon in violation of 18 U.S.C. § 2113(a) and (d) and 2; (2) attempting to commit the same crime in violation of 18 U.S.C. § 2113(a) and (d) and 2; and (3) knowingly brandishing a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c) and 2.

## I.     BACKGROUND

This case came before the Court for a hearing on November 3, 2008, to address numerous motions filed on behalf of Defendant Wood. Assistant United States Attorney Tracy L. Stone was

present for the Government. Attorney G. Scott Green represented Defendant Wood, who was also present. Attorney Andrew S. Roskind represented Defendant Dyer, who was also present.

In a prior Memorandum and Order [Doc. 75], the Court ruled on the following motions: Motion to Produce and Preserve Rough Notes [Doc. 44], Motion in Limine to Preclude Introduction of Physical Evidence [Doc. 45], Motion for Disclosure of Bad Acts Evidence [Doc. 46], Motion for Bill of Particulars [Doc. 47], Motion to Provide a List of Witnesses [Doc. 48], Motion to Sever and/or Exclude Co-Defendant's Statements to Law Enforcement [Doc. 49], Motion in Limine to Require the Government to Establish the Proper Foundation Prior to Admitting Any Co-Conspirator's Statements [Doc. 50], Motion in Limine to Limit Cross-Examination of Defendant Wood [Doc. 52], Motion to File Additional Motions Late [Doc. 54], and Motion Pursuant to Rule 12(b)(4)(B) [Doc. 56]. However, Defendant Wood's Motion to Suppress Statements to Law Enforcement [Doc. 53] and Motion in Limine to Preclude Introduction of Defendant Wood's Admissions About Parole [Doc. 55] remain outstanding.


II.    **INTRODUCTION**

On January 18, 2008, Defendant Steven Wayne Wood ("the Defendant") was arrested on the bank robbery and firearm charges described above. The Defendant admits that he was advised of his constitutional rights pursuant to <u>Miranda</u>. However, the Defendant claims that prior to his waiving of these rights, government agents asked to speak with him "off the record." The Defendant contends that after being given an assurance that the conversation was "off the record" he made certain statements to officers which he now seeks to suppress. The Defendant argues that the statements were the product of coercion by government agents, and they should be suppressed. [Doc.

53].

The Government denies that the Defendant's statements were the product of coercion and states that no officer or agent ever advised the Defendant that their conversation was "off the record." The Government claims that the Defendant was not interrogated and did not make any statements prior to his executing a Miranda waiver and the waiver was a knowing and voluntary consent despite the Defendant's allegation. [Doc. 58].

## III. FACTS

One witness testified at the hearing. Federal Bureau of Investigation ("FBI") Agent James Runkel ("Agent Runkel") described the events surrounding the Defendant's arrest. As a preliminary matter, Agent Runkel testified that he is a member of the Knoxville, Tennessee, division of the FBI and works out of the FBI office in Johnson City, Tennessee. Agent Runkel stated that he is responsible for Grainger County, Tennessee.

Agent Runkel explained that on January 18, 2008, he was called to the scene of the attempted robbery, which the Defendant was suspected of perpetrating, and afterward, the Defendant was apprehended in Union County. Agent Runkel spoke with the Defendant after his apprehension at the Grainger County Detention Center. Agent Runkel explained that when he spoke to the Defendant Special Agent Jeffrey Blanton was also present in the interview room, and Detective Derrick Dalton was in and out of the room at various times. Agent Runkel testified that Detective Dalton did not ask any questions of the Defendant while Agent Runkel was present.

The Government then presented the Defendant's Miranda waiver, the FD-395 form. Agent Runkel recognized the waiver and explained that the agents had advised the Defendant of his

3

constitutional rights by reading the document to him. The Defendant responded to the questions posed in the waiver, and Agent Runkel stated that the agents copied the Defendant's answers verbatim onto the waiver. Agent Runkel testified that he saw the Defendant sign the waiver and that he and Agent Blanton also signed the waiver. Thereafter, the FD-395 form containing the waiver was marked as **Exhibit 1** and admitted into evidence. Agent Runkel also confirmed that there was no substantive questioning prior to the execution of the waiver—the agents simply identified themselves and advised the Defendant of his rights.

The Government next presented Agent Runkel with his notes and FD-302 form from January 18, 2008, which was marked as **Exhibit 2** and admitted into evidence later in the hearing. The Government asked Agent Runkel to review the substance of the conversations between he, Agent Blanton, and the Defendant. Agent Runkel testified that the Defendant said he knew Co-Defendant Lonnie Dyer ("Co-Defendant Dyer"). The Defendant told the agents that Co-Defendant Dyer came to the Defendant's residence sometime before 9:30 a.m. on January 18, 2008, with a firearm that was later determined to be a 20 gauge shotgun. Agent Runkel explained that because the weapon had not been located at the time of the interview the agents asked the Defendant to describe the weapon. Agent Runkel stated that through a series of yes/no questions regarding the physical appearance, gauge, automation, and other characteristics of the gun the agents determined it was a 20 gauge single barrel shotgun with a dark wood stock. Agent Runkel said the Defendant claimed he did not know what had happened to the gun.

Agent Runkel confirmed that after the Defendant described the gun he admitted his involvement in the bank robbery. Agent Runkel testified that he never told the Defendant any part of their conversation was "off the record." Agent Runkel stated that Agent Blanton and Detective

4

Dalton did not tell the Defendant that any portion of the conversation was "off the record," and Agent Runkel confirmed that he was in the interview room from the time the waiver was administered until the interview was completed. After the interview was completed, Agent Runkel said he stepped out to tell other agents that the interview had not yielded any information regarding the location of the shotgun.

On cross-examination, Agent Runkel confirmed that the bank robbery incident was an attempted robbery and that no money was actually taken from the bank. Thereafter, Agent Runkel went step by step through the events of January 18, 2008. He explained that he was dispatched from the Johnson City office and drove to the bank in Grainger County with Special Agent Steven Francke. Agent Runkel stated that Agent Blanton did not ride with him. Agent Runkel explained that he and Agent Francke went to the bank while Agent Blanton and local law enforcement went to the site in Union County where the vehicle that police suspected had been used in the attempt had crashed. Agent Runkel testified that he and Agent Francke interviewed various personnel at the bank while Agent Blanton was in Union County. Agent Runkel said that, to the best of his recollection, he got to the bank around noon.

Agent Runkel confirmed that after visiting the bank he went to the scene in Union County at Tater Valley Road. Agent Runkel estimated his time of arrival as being between 1:00 p.m. and 3:00 p.m., but he noted that he went to the scene quickly because there was a potentially armed fugitive in a wooded area. Agent Runkel stated that by the time he got to the scene, Co-Defendant Dyer was in custody, but the Defendant was not. Agent Runkel confirmed that the first time he saw the Defendant was when Agent Francke escorted him down from the mountain behind the residence at 117 Tater Valley Road. Agent Runkel acknowledged that the officers and agents had not

5

recovered the weapon alleged to have been used in the robbery when they escorted the Defendant down the mountain. Agent Runkel explained that the Defendant was initially placed in the back of a local patrol car but was placed in a Tennessee Highway Patrol car for the ride to the Grainger County Detention Center.

Upon arrival at the Detention Center, the Defendant was booked and put in an interview room. Agent Runkel stated that agents met the Defendant in that interview room shortly thereafter. Agent Runkel confirmed that the agents did not make an audio or video recording of the interview and explained that video and audio recording of such interviews were not the policy of the agency and that, while the FBI allows agents to tape such interviews, Agent Runkel and Agent Blanton never discussed taping the interview.

Agent Runkel recalled that when he and Agent Blanton came into the interview room the Defendant was alone. Agent Runkel did not recall whether Detective Dalton made the initial entry into the room with the agents, but Agent Runkel recalled that he was in and out of the interview room. While Agent Runkel admitted that he did not know what other officers might have said before he got to the interview room, he stated that he had spoken to Detective Dalton several times since the interview and that Detective Dalton had confirmed no other officers spoke to the Defendant before Agent Runkel and Agent Blanton arrived. Agent Runkel explained that because of the nature of the investigation of a bank robbery, the local agents knew that the federal agents would take the lead in the investigation. However, Agent Runkel admitted that he was the only law enforcement officer available to testify regarding the pertinent events at the hearing. Agent Runkel also admitted that he had not heard of any conversation between a Grainger County officer and the Defendant regarding them previously hauling hay, which the Defendant claims took place before he was

6

interviewed, and in response, Agent Runkel clarified that no conversations which were pertinent to the investigation took place prior to he and Agent Blanton entering the interview room.

Next, Agent Runkel was cross-examined regarding his FD-302 form and the notes he took during the interview of the Defendant, **Exhibit 2** to the hearing. Agent Runkel again explained that upon entering the interview room, he and Agent Blanton identified themselves and told the Defendant that they needed to advise him of his rights under <u>Miranda</u>, and thereafter, Agent Blanton took the FD-395 form and reviewed it with the Defendant. Agent Runkel confirmed that he had written preliminary information including the Defendant's date of birth, prior convictions, and current parole officer in his notes. When asked why the FD-302 contained additional information such as the Defendant's social security number, address, and occupation, Agent Runkel confirmed that the information regarding the Defendant's occupation was also contained in his notes but not in the same chronological order. As to the address and other information, Agent Runkel explained that his notes were meant to jog his memory and were completed in his own shorthand. Agent Runkel stated that the FD-302 was the synopsis of the interview not the notes and contained the information that was pertinent to the investigation.

Agent Runkel acknowledged that when he wrote the FD-302 he made a professional judgment call as to what information would be included, but he also explained that it was his duty as an agent to include any information that was exculpatory or inculpatory in the FD-302. Agent Runkel confirmed again that his notes and the FD-302 were not written in chronological order but were instead meant to be a synopsis of the interview.

Thereafter, Agent Runkel reviewed the events surrounding Defendant's waiving his rights under <u>Miranda</u>. Agent Runkel explained that Agent Blanton took the lead in explaining the rights,

7

and Agent Runkel took notes regarding the waiver and later questioning. Agent Runkel stated that, after the Defendant waived his rights, the agents began the interview by asking the Defendant to give a narrative of the morning's events, which Agent Runkel briefly reviewed at the hearing. Agent Runkel also confirmed that the Defendant had informed agents that he had a grand mal seizure the day before the interview and that he took Neurontin for the seizures. Agent Runkel explained that, in his opinion, the seizure and medication did not affect the waiver, which was voluntarily, but Agent Runkel noted that after the agents found out about the seizure they notified the sheriff who had a member of the county medical staff check the Defendant's condition.

Finally, Agent Runkel reviewed his notes and acknowledged that neither his FD-302 synopsis or notes from the interview state that the Defendant admitted to a shotgun being utilized in the course of the robbery.

## IV.    ANALYSIS

In his Motion to Suppress [Doc. 53], the Defendant admits that he executed a written waiver of his rights under Miranda. However, the Defendant claims that prior to waiving his rights agents or officers asked to speak to him "off the record." The Defendant argues that the assurance that the conversation was "off the record" was a promise that his statements would not be used against him. The Defendant contends that the promise was a coercive technique that overbore his will and rendered his statements to the agents involuntary, notwithstanding his waiver of his rights under Miranda.

Before the government may introduce an incriminating statement by a defendant, it must prove that the defendant voluntarily, knowingly, and intelligently waived his or her Miranda rights.

8

Colorado v. Connelly, 479 U.S. 157, 169-70 (1986).  The government bears the burden of proving

the voluntariness of the waiver by the preponderance of the evidence.  Id. at 168.  A statement is

involuntary for due process purposes if: (1) it was extorted from the defendant by employing

objectively coercive conduct; (2) the coercive conduct was sufficient to overbear the defendant's

will; and (3) the coercive conduct was in fact the cause of the defendant's will being overborne.

McCall v. Dutton, 863 F.2d 454, 459 (6th Cir. 1988).

     In the present case, Agent Runkel's testimony and the FD-395 form establish that the

Defendant was advised of his rights under Miranda prior to any interrogation.  The Court finds

Agent Runkel's testimony to be credible.  After the Defendant was located by agents, he was

transferred to the Grainger County Detention Center.  All evidence in the record indicates that

immediately upon entering the interview room Agent Runkel and Agent Blanton advised the

Defendant of his rights and he made a voluntary and knowing waiver of these rights, as evidenced

by the verbatim entry of the Defendant's answers on the FD-395 form and his later signature on the

same.  Thus, the Court finds that the Defendant made a knowing and voluntary waiver of his rights

under Miranda.

     There is no evidence to support the Defendant's contention that his Miranda waiver was

undermined by earlier promises that his statements were "off the record."  While the Defendant

claims that prior to executing his Miranda waiver, agents or officers asked to speak to him "off the

record," there is no evidence of such statements by officers or agents.  In contrast to the Defendant's

allegations, Agent Runkel testified that no other officers questioned the Defendant about the robbery

prior to the interview at the detention center.  Regardless of any non-pertinent or superficial

conversations the Defendant claims to have had with the officers who transported him, the Court has

9

no reason to question the integrity of Agent Runkel or doubt the veracity of his testimony, which supports a finding that no assurances were made to the Defendant to coerce his statements.

Based upon Agent Runkel's testimony, the FD-395 form, and the lack of contradicting evidence, the Court finds that the Government has established that the Defendant's statements to law enforcement were not obtained using objectively coercive conduct. Because the first prong of the test for involuntary statements—objectively coercive conduct—is not present, the Court finds that analysis of the second and third prongs of the McCall test—whether the behavior was sufficient to and did in fact overbear the Defendant's will—is unnecessary. See McCall, 863 F.2d at 459. All the evidence in the record supports the Government's position that the Defendant made a knowing and voluntary waiver of his Miranda rights, and therefore, the Defendant's position that his statements were involuntary because he was told they would be "off the record" fails.

## V.    CONCLUSION

Based on the foregoing, the Court finds that the Defendant's motion is not well-taken, and accordingly, the undersigned **RECOMMENDS** that the Defendant's Motion to Suppress **[Doc. 53]** be **DENIED**.[1]

---

[1]Any objections to this report and recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); see United States v. Branch, 537 F.3d 582 (6th. Cir. 2008); see also Thomas v. Arn, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the ten-day time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).

As previously noted, the Defendant's Motion in Limine **[Doc. 55]**, which moves for the preclusion of the Defendant's statements regarding his parole status from trial, has not yet been addressed by the undersigned.  Because this motion relates directly to trial procedures and the admissibility of evidence at trial, the said motion **[Doc. 55]** will be **HELD IN ABEYANCE**, to be addressed by the trial judge, District Court Judge Leon Jordan.

Respectfully submitted,

s/ H. Bruce Guyton
United States Magistrate Judge

11